SHROPSHIRE et al. v. ALVARADO STATE BANK.  (No. 8636.)

(Court of Civil Appeals of Texas. Ft. Worth. May 19, 1917. On Rehearing, June 23, 1917.)

1. GARNISHMENT ⬨41—PROPERTY SUBJECT TO—INTEREST ON NOTES.

Where parties agreed that the principal of certain notes should not be paid, but interest should be paid until the payee's death, the makers were liable in garnishment for the interest due when their garnishment answers were filed, but not thereafter, since the accrual of interest might be terminated by the payee's death.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 78–81.]

2. TRIAL ⬨105(5)—PAROL EVIDENCE—ADMISSION WITHOUT OBJECTION.

Parol evidence varying a written instrument will be disregarded, although not objected to.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 265.]

On Rehearing.

3. BILLS AND NOTES ⬨125—SUFFICIENCY OF EVIDENCE.

Evidence that deeds recited that interest accruing on the purchase-money notes was to be the grantors' support while they lived, and should be paid until the grantors both died, and that the notes were unconditional in terms, with no interest payments credited or indorsed thereon because of one payee's death, sustains a finding that the surviving payee was entitled to all, instead of half, the interest.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 274–281.]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Garnishment proceedings by the Alvarado State Bank against J. E. Shropshire and others. Judgment for plaintiff, and the garnishee defendants appeal. Affirmed as modified, and motion for rehearing overruled.

E. A. Rice, of Cleburne, and R. S. Phillips, of Ft. Worth, for appellants. W. H. Spinks of Alvarado, for appellee.

DUNKLIN, J. On June 18, 1908, D. N. Shropshire and wife, Mrs. P. E. Shropshire, executed a deed of conveyance to each of their three children, D. N. Shropshire, Jr., J. E. Shropshire, and Mrs. F. Q. Carter. Each of said deeds was a conveyance to the grantee of certain real estate. In each deed the consideration recited was $1,000 cash, and the promissory note of the grantee in the sum of $3,596.66 of even date with the deed, due December 1, 1920. Each deed also contained the following stipulation:

"Conditioned: Whereas, we are desirous of dividing our estate among our heirs so far as possible while we live, and to avoid the expense and delay of a regular administration, we adopt this method as follows: The land note for the sum of $3,596.66 is not intended to ever be paid, except the annual interest accruing thereon, which is to be our support while we live, and at the time of our death, or as soon thereafter as is consistent in law, make some one or two of our heirs act as our agent in clearing up our estate: First, to deliver the said land note to the heir executing or assuming same as a part of their heritable interest in or to our estate; second, to settle our indebtedness, if any, out of such personal property which we may have at the time of our death and divide equally the remainder, if any, among our heirs, except a strip of land nine feet wide off of the west end of same for road."

The note recited in each deed was made payable to the order of D. N. Shropshire, Sr., and his wife, Mrs. P. E. Shropshire, with interest upon the principal from January 1, 1909, until paid at the rate of 8 per cent. per annum, the "interest payable annually December 1st as it accrues." In each instance a vendor's lien was retained on the property conveyed both in the deed and also in the note. The interest on those notes was all paid up to December 1, 1913. On September 23, 1914, the Alvarado State Bank, who then held an unsatisfied judgment against D. N. Shropshire, Sr., for the sum of $1,131.80, dated June 7, 1915, and drawing interest at the rate of 10 per cent. per annum from date, sued out writs of garnishment upon said judgment to be served upon each of the grantees in said deeds requiring each garnishee to appear before the district court of Johnson county on the 5th day of October, 1914, then and there to answer upon oath what, if anything, such garnishee is

---

⬨For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

indebted to D. N. Shropshire, Sr., and was when the writ of garnishment was served and what effects, if any, of said D. N. Shropshire, Sr., the garnishee had in his possession and had when the writ was served. Writs of garnishment were served upon all of the garnishees on the 24th day of September, 1914. On October 5, 1914, which was return day of the writs, the garnishees all filed answers to the writs. In each answer it was alleged that the garnishee was not indebted to D. N. Shropshire, Sr., in any sum either at the time of the service of the writ, or at the time of the filing of the answer in garnishment. Each answer of the garnishee further alleged, however, the execution of the deed to him by D. N. Shropshire and wife and the execution and delivery of the promissory note given in part consideration therefor. It was further alleged that the note so given was a negotiable instrument, and not yet due, and that no interest would become due thereon until December 1, 1914; that the garnishee did not know who was the owner of the note or who held the same, and the further allegation that the indebtedness evidenced by the note was not subject to garnishment.

The plaintiff, by verified pleadings, controverted the truth of the answers of the garnishees, predicating said controversy upon the alleged right to hold the garnishees for the debts evidenced by the vendor's lien notes which were alleged to be owned by D. N. Shropshire, Sr. The stipulation in the deeds copied above was specially alleged as constituting parts of the vendor's lien notes, and as limiting the terms thereof. A trial resulted in a judgment in favor of the bank against the garnishees, from which the garnishees have prosecuted this appeal.

The case was tried by the court without a jury, and the trial judge has filed findings of fact and conclusions of law. The facts found by the trial judge included those stated above. There was a further finding that D. N. Shropshire, Sr., was the owner and holder of the notes at the time the garnishment writs were served, and at the time the garnishees filed their answers, and that they remained in his possession until November 16, 1914, on which date D. N. Shropshire, Sr., "turned said notes back to the said defendants in garnishment and executed a release to said notes, and that said notes are now in the hands of the defendants in garnishment." The trial judge further found that at the date of the trial of the present suit, which was May 19, 1916, each garnishee was indebted to D. N. Shropshire, Sr., interest for more than two years on his said note, or the sum of $635.14, making the sum total of interest then due on all three of said notes $1,906.32. But judgment was rendered against each garnishee for only $407.16, or a total of $1,221.48, against the three garnishees; the latter sum being the full amount then due upon the judgment then held by the bank against D. N. Shropshire, Sr., and upon which judgment the garnishment proceedings were sued out.

D. N. Shropshire, Sr., who was the only witness introduced upon the trial of the case, testified that it was never intended by the parties to the notes that the notes should be paid, but that they should run continuously until the death of himself and wife; in other words, his testimony was that the intention of the parties to the transactions was as recited in the stipulation in the deeds, a copy of which is set out above.

It thus appears from the uncontroverted proof that as between the parties themselves it was understood that the principals of the notes were never to be paid, and that payment of the interest thereon should cease upon the deaths of the payees. It further appears that at the time the writs were served and at the time the answers of the garnishees were filed, it was uncertain whether or not garnishees would ever owe the payees any further sums than the interest which had then accrued, as such future indebtedness was dependent solely upon the contingency of the continued life of D. N. Shropshire, Sr.; his wife having theretofore died. In Drake on Attachment, § 551, the following was said:

"The debt from the garnishee to the defendant, in respect to which it is sought to charge the former, must moreover be absolutely payable, at present or in the future, and not dependent on any contingency. If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached; for that cannot properly be called a debt which is not certainly and at all events payable, either at the present or some future period."

See, also, same author, sections 552 to 553a, and 20 Cyc. 1007.

In Thompson v. Gainesville National Bank, 66 Tex. 156, 18 S. W. 350, our Supreme Court sustained a judgment against the maker of a negotiable note as garnishee, which note was not due at the time of service of the writ of garnishment, but matured before the answer in garnishment was filed, and was in the hands of the payee at the time of rendition of the judgment against the garnishee. And in that case the court said:

"The law exempts the maker from a judgment * * * whilst the note is current, because he would not otherwise be protected by the judgment from his liability to the holder. But, if he is fully protected by the judgment, there is no reason why one should not be rendered against him, though the note was not due when the writ was served. Protection * * * secured to the maker, the reason of the law for not subjecting him to garnishment has ceased, and the plaintiff should be entitled to the benefit of his indebtedness to the defendant."

See, also, Insurance Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 8 Am. St. Rep. 566; Hutcheson v. King, 37 Tex. Civ. App. 151, 83 S. W. 215; Marble Falls, Ferry Co. v. Spitler, 7 Tex. Civ. App. 82, 25 S. W. 985.

[1, 2] In the case of Planters' Bank v. Floeck, 17 Tex. Civ. App. 418, 43 S. W. 589, it was expressly held that the service of the writ of garnishment did not charge the garnishee bank for funds belonging to the judgment debtor coming into the hands of the garnishee after it filed its answer. That decision was approved by our Supreme Court by the denial of a writ of error, and we have been cited to no case, and have found none in our state, to a contrary effect. And we can see no logical reason for a different rule to control with reference to indebtedness which is not, for any reason, subject to the writ of garnishment at the time the answer of the garnishee is filed, but which might be reached by new process thereafter issued. As said in that decision, the right of garnishment is strictly a statutory right, and in order for it to be available the statute must be strictly followed. See, also, Medley v. American Radiator Co., 27 Tex. Civ. App. 384, 66 S. W. 86; 20 Cyc. 1065, 1066. As the statutes upon that subject are not always the same, we find different rules prevailing in different states. See 12 R. C. L. 779, 780.

On October 5th, which was the date the garnishees filed their answers, there had accrued upon the note of each the sum of $242.96, although the same was not then due, but which would become due on December 1st following. In view of the fact that the notes had been released and surrendered to the makers who still held them at the time of trial, the makers were properly chargeable with the interest so accrued at the time their answers were filed, since there would be no danger of another demand for such debts by other persons. But as it was entirely uncertain at the time the answers were filed whether the garnishees would ever owe any further sums upon the notes, the amount which had then accrued was the extent to which each garnishee could be held liable to the plaintiff in the case; and the fact that after the writs of garnishment were filed, the holder of the notes surrendered them to the makers could not affect the right of plaintiff to subject that amount of indebtedness to the satisfaction of the judgment held against D. N. Shropshire, Sr.

Appellants insist that as the notes were executed with the intention that only the interest thereon should be collected and that, too, as a means of support of D. N. Shropshire and his wife, and that as his wife was dead, in no event could the garnishees be chargeable with more than one-half of the interest owing by the garnishees at the time the writs were served. D. N. Shropshire, Sr., testified as follows:

"I was the legal and equitable owner of one-half of these notes at the time I made the releases. I have been the legal and equitable owner of the one-half in these notes all the time since they were delivered to me, until I released them, and I also collected the interest on three of them during this time, and lived off the same. I was only owner of one-half of the same when this suit was brought. One-half interest in these notes became the property of my children at the death of my wife. Their names are D. N. Shropshire, Jr., J. E. Shropshire, Mrs. Lena Carter, and Mrs. Lizzie Rippy. They all live in Alvarado, Johnson county, Tex. It was stated in the deeds that these notes were never to be paid, and that the notes were not negotiable, but the interest was to be paid annually and the notes were at our death to return to the makers. I did keep them in my possession continuously until I released them in November, 1914."

There was no other testimony relative to the death of the wife of D. N. Shropshire, Sr., and that testimony wholly fails to state the date of her death. So even though we should feel inclined to adopt the construction of the instruments now suggested by the appellants, we could not do so for lack of proof of the date of the death of Mrs. Shropshire; hence we express no opinion as to the correctness of that contention.

The testimony of D. N. Shropshire, Sr., to the effect that he only owned a one-half interest in the notes, was but a conclusion, and even though no objection was urged thereto, it was incompetent to change the legal effect of the notes. The rule that parol testimony is not admissible to vary, change, or add to a written instrument is one of substantive law, and not a mere rule of evidence, and testimony introduced in violation of that rule, even in the absence of objection thereto, can be given no legal effect. Rubrecht v. Powers, 1 Tex. Civ. App. 282, 21 S. W. 318; Callahan v. Houston, 78 Tex. 494, 14 S. W. 1027; Henry v. Phillips, 105 Tex. 459, 151 S. W. 537; 4 Wigmore on Evidence, §§ 2400, 2425; 3 Jones on Evidence, § 434; 10 R. C. L. pp. 1017, 1018.

For the reasons noted above the judgment of the trial court is so reformed as to reduce the amount awarded against each garnishee to the sum of $242.96, or the aggregate sum of $728.88 against all three garnishees, with interest thereon at the rate of 6 per cent. per annum from the date of judgment of the trial court, and, as so reformed, the judgment will be affirmed.

The trial court did not allow any attorney's fees to the garnishees for filing their answers, and in the absence of any testimony appearing in the statement of facts to show what would be a reasonable sum to allow such garnishees, we will be unable to make any such allowance. But all costs of suit, both in the trial court and in this court, will be taxed against the plaintiff, thus leaving the amount of judgment rendered against the garnishees and indicated above the total amount chargeable against them.

Reformed and affirmed.

### On Rehearing.

Appellants insist that since the notes were made payable to P. E. Shropshire and wife, and the interest accruing upon them was for the support of both, after the death of Mrs. Shropshire one-half only was payable

to the surviving husband; and that as the evidence showed that she was dead at the date of the institution of the garnishment proceedings, we should reduce by 50 per cent. the amount for which this court affirmed the judgment of the trial court.

[3] While the deeds do recite that the annual interest accruing on the notes "is to. be our support while we live," they further stipulate, in effect, that such interest should be paid until the death of both payees, and the notes are not to be surrendered to the makers until after the death of both. There is no stipulation in the deeds that there was to be an abatement of the interest by reason of the death of one of the payees prior to the death of the other. And by the acceptance of the deeds the grantees became bound by the terms and conditions therein contained. The notes themselves were unconditional in their terms, and but for the conditions quoted expressed in the deeds the garnishees would have been legally liable for the principals of the notes as well as for the annual interest accruing thereon. Furthermore, it does not appear that any credits were ever indorsed upon the backs of the notes for any part of the interest by reason of the death of Mrs. Shropshire; neither did appellants in their pleadings allege,or contend that it was the understanding between the parties to the deeds and notes that, in the event of the death of either payee before the death of the other, only one-half of the annual interest accruing on the notes should be collected by such survivor.

Under such a showing in the record we are unable to disturb the trial court's findings, in effect, that after the death of Mrs. P. E. Shropshire her surviving husband was entitled to collect the full amount of interest stipulated in the notes, as the same fell due. Accordingly, the motion for rehearing is overruled.